CONSTANCE B. PRICE, Appellant, v. WALTER J. PRICE, STEPHEN BROWN and Others, as Executors of WALTER W. PRICE, Deceased, Respondents.

*Evidence — what testimony of a party is inadmissible as relating to a personal transaction with a deceased person — Code of Civil Procedure, sec. 829.*

This action was brought by the plaintiff to recover the proceeds of bonds which were alleged to have been placed by her in the hands of the defendants' testator for safe keeping, and which had been subsequently sold by him. Plaintiff testified that she had $12,000 in bonds in her trunk on or before March 25, 1865; that on the morning of that day five $100 bonds were stolen; that the testator came to her room after the discovery of the theft; that he came again with a detective; that the detective after examining the room said to the testator that the theft had not been committed by a professional thief, that if it had been he would have taken all the bonds.

The plaintiff was then allowed, against the defendants' objection and exception, to answer the following question: "What did Price (defendants' testator) say to Bennett (the detective) in your presence." Her answer to which was: "No, of course, if it had been they would have taken all of them, whereas here is the balance of $12,000 in my pocket. He took them out of his pocket and exhibited — took them from the envelope they were in. But, he said, they won't get any more, because I am going to put them into a bank for her, meaning me." She testified that she spoke more than once during the conversation, but that she said nothing while the remarks as to which she had testified were being made.

*Held,* that the testimony was inadmissible under section 829 of the Code of Civil Procedure.

Appeal from a judgment in favor of the plaintiff, entered on the report of a referee.

*Hughes & Northup,* for the appellant.

*J. L. Hill,* for the respondents.

Davis, P. J. :

This action was brought to recover, amongst other things, the sum of $6,500 and interest, alleged to be part of the proceeds of $11,500 of United States government bonds the property of the plaintiff, which the plaintiff claims were received from her by the defendants' testator, Walter W. Price, in his lifetime for safe keeping, and which he afterwards converted into money and kept the proceeds in his hands for her benefit.

It presents for consideration many questions of no inconsiderable

interest. But at its threshold there is one which relieves us from the consideration of all others, because of our inability to see any escape from a reversal of the judgment and a new trial. The plaintiff was called as a witness on her own behalf to testify against the defendants who are representatives of a deceased person. Section 829 of the Code of Civil Procedure restricts the testimony which she can give, and so far as applicable to her testimony is in these words : " Upon the trial of an action  *  *  a party  *,  *  shall not be examined as a witness in his own behalf or interest  *  *  against the executor  *  *  of a deceased person  *  *  concerning a personal transaction or communication between the witness and the deceased person," except in a case not presented upon this trial. The plaintiff was called for the purpose of showing that she was the owner of $11,500 of United States government bonds, which came to the possession of the defendants' testator for her use and benefit. She gave testimony showing that bonds to the amount of $12,000 were in her trunk in her own apartment on or prior to the 25th of March, 1865 ; that on that morning she discovered that five $100 bonds had been stolen from her trunk ; that the remaining $11,500 were still there ; that the defendants'·testator came to her room after the discovery of the theft ; that subsequently he came again with one James H. Bennett, a detective ; that while he was, there Bennett examined the windows and the doors and talked about the robbery and said it was no regular thief that had been there, no professional thief ; that if it had been a professional thief he would have taken the whole of the bonds ; that those statements were made by Bennett to the defendant's testator. She was then asked :  " Did Mr. Price (defendants' testator) make any statement in response to anything said by Bennett ?"  This was objected to by the defendants as incompetent generally, and as incompetent for the reason that it calls for a personal transaction or communication concerning the witness and a deceased person. The referee admitted the testimony and the defendants' excepted. She answered " Yes sir." She was then asked, " What did Price say to Bennett in your presence ?" The same objections were made ; and thereupon she was cross-examined touching her competency as a witness; on which cross-examination she stated that she could not remember that up to that particular time she had taken any part in the conversation ; that she

thought she spoke while they were there sometimes; that she must have spoken during the interview; that she thought she must have spoken more than once during the conversation; that she answered some question of Mr. Bennett's, but that she thought she did not take part in the conversation generally. She was then asked again, "What did Price say to Bennett in your presence," to which she responded: You mean when Price said it was no professional thief?

Q. Yes. A. Well, he said, "No, of course; if it had been they would have taken all of them, whereas here is the balance of the $12,000 in my pocket."

Q. (By referee.) Meaning Mr. Price's pocket? A. Yes, sir; he took them out of his pocket and exhibited—took them from the envelope they were in. "But," he said "they won't get any more because I am going to put them into a bank for her"—meaning me.

Q. Was anything said by you in the course of these remarks between Price and Bennett to which you have testified? [Defendants objected as leading and as incompetent. Objection overruled; defendants excepted.]

A. "No, I did not; Price and Bennett came to the premises together; when they came the bonds were in Mr. Price's pocket.

Q. Do you know whether or not Mr. Price was at the place or in that room any time before his return with the bonds after the discovery of the theft? This was objected to, the objection overruled and the defendants excepted. She answered; "He was there before he came with Mr. Bennett and after the theft."

We have endeavored to find in the numerous decisions construing section 829 some rule by which the testimony of the plaintiff could be upheld consistently with that section, but we find it out of our power to do so. The decisions are numerous, and to reconcile them with each other is a labor we are fortunately not called upon to perform. But no one of them, we think, goes far enough to sustain the rulings of the learned referee in this case, although some of them may seem to do so. The rule of the section itself is, we think, simple and plain. It declares that the surviving party in such a case as this shall not give testimony against the representative of a deceased person concerning a personal transaction or communication between him and the deceased person. The object of the rule is

equally clear and plain. It is that where death has closed the lips of one party to a personal transaction or communication between him and another, which the deceased could obviously contradict or explain were he living, the other shall not be a witness to prove such transaction or communication in an action against the representatives of the deceased. The evidence in such a case to be excluded may be that concerning a personal transaction between the witness and the deceased, or that concerning a communication between them. In either case the survivor is not to be heard, because the dead person cannot be.

In the testimony already referred to we are of opinion that this rule was violated in both its aspects. The plaintiff was permitted to give evidence concerning a personal transaction between her and the deceased. It was sought to prove that $11,500 of United States bonds belonging to the plaintiff were on the morning of the 25th of March, 1865, delivered from her possession into the possession of the defendants' testator. This was done by showing that on the morning of that day those bonds were in her possession in her trunk and in her room, and that a portion of her bonds were on that morning discovered by her to have been stolen. So far the testimony was entirely competent. But it was followed by testimony to the effect that the defendants' testator, after the discovery of the theft, came to her room and subsequently left and returned with a detective, who examined the premises and came to a conclusion in respect of the theft; and that at the time the detective came to that conclusion and announced it, the testator had in his pocket the $11,500 bonds of the plaintiff. This was proving a matter of substantial fact concerning a personal transaction between the plaintiff and the deceased; because the several facts just stated taken together show that her bonds remaining in the trunk on that morning had in some manner been transferred to the possession of the deceased and were then in his pocket. Her claim, it will be recollected, is that they were to be delivered to him for safe keeping for her benefit; and the testimony given most clearly concerns that personal transaction which, according to the testimony, must have been had between the two, and goes far toward establishing the allegations of her complaint. We are unable to see on what ground that testimony could have been admitted, consistent either with the

letter or the spirit of the section. Nothing is clearer than that if the defendants' testator were living, and the same testimony given by the plaintiff, he would be competent and have it in his power, either to contradict or to explain the transaction in such way as to deprive it of all valuable force in the plaintiff's favor. But being dead his representatives are deprived of his testimony in contradiction or explanation, and such testimony as the plaintiff was permitted to give must, if legal, stand in full force against them and put them upon some other mode of explanation or contradiction.

Again, the provision which precludes the plaintiff from testifying against the defendants, concerning a personal communication between her and the deceased was, we think, also violated in admitting a portion of her testimony.

It was important of course for the plaintiff to show not only that her bonds had been transferred on that morning from her own possession to the possession of the testator, but in some manner to characterize that transfer, so as to show that it was one which subjected the testator to the obligations and duties of her depositary. To do this a conversation, which the plaintiff claims was entirely between the detective and the deceased, was proved to have taken place in the plaintiff's presence without such participation therein on her part as would make it a personal communication between her and the deceased.

Cases are cited which appear to go so far as to uphold that sort of distinction, to wit, that the communication which cannot be proved must be personal between the witness and the deceased in the sense of having been directly addressed or spoken by the latter to the former. We think those cases have no sound principle to stand upon. A personal communication, within the true meaning of the section, is any one which the surviving party claims to have received directly or indirectly from the deceased person, and which the deceased person if living could contradict or explain. Nor, in our judgment, is the mode of making the communication by the deceased to the survivor at all controlling. Under the authorities cited, it would seem that A. and B. might have a transaction between themselves not only personal but entirely private, to which no person but themselves could testify ; and that if B. should die so that A. could not testify to the transaction, he could testify that after it

was concluded he, without taking any part in the conversation himself, heard B. relate the transaction and its terms to C. and thereby establish the transaction solely on his own testimony by proving the communication made to C. which he overheard. In such a case we think his testimony should be excluded both as " concerning " the personal transaction between him and the deceased, and as " concerning " a communication between them. Spoken words are communicated to all who hear and understand them, whether addressed to one or many ; and there is no sound reason for saying that A. who hears B. relate facts to C., does not derive them by direct or personal communication from B., as much as C. himself to whom they are addressed. There is no sound reason, either, why if B. alleges that in that conversation A. admitted that he owed to B. a large sum of money, B. should be at liberty to prove that indebtedness by that admission, after the death of A., because the conversation was specially addressed to C. His testimony should be excluded in such a case for the simple reason that it takes the evidence which he seeks to give against the representatives of A. from the mouth of the deceased person whom they represent, and by whom if living they could disprove or explain the evidence. So that we think there is no soundness in the position that the Code permits a party to testify against executors to what their testator told another in his presence while he could not testify to it if told directly to himself. The reason for the exclusion in each case is the same ; because, if the testimony is admissible in either, it is sufficient if credited to establish a right of recovery against a dead man's estate without giving any further or other testimony after death has closed the lips of the other party.

We are of opinion, therefore, that the testimony of the plaintiff in this case to the effect that when the statement was made by the detective that it was no common thief who stole the bonds, the testator declared in substance that whoever it was he would get no more of them because he had the residue in his pocket to be deposited in bank for the plaintiff was improperly admitted. That evidence was not admissible :

*First.* Because it " concerned " a personal transaction, to wit, a bailment sought to be established against the deceased's estate by the testimony of the plaintiff in her own favor ; and,

*Secondly.* Because it was such a communication, personally made to her by the testator, as he if living could have contradicted or explained, and is therefore within the true meaning of the section incapable of proof by her.

Besides, it appears on reading the whole testimony relating to this branch of the case that the plaintiff had taken some part in the conversation that occurred between the detective and the testator. What part of the conversation she participated in does not appear; but her testimony tends to show that it did not relate to that portion which communicated the possession of the bonds by the testator and explained the exhibition of them made on taking them out of his pocket, to which the plaintiff testified. Participating in some part of a conversation had in her presence has within some of the cases been deemed sufficient to exclude the testimony against a deceased person. Assuming those cases to be correctly decided, we see no way of escaping their controlling application to this case.

We are strongly impressed with the general equity of the plaintiff's claim, and should be glad to have reached a conclusion on this question which would leave us to consider the other branches of the case. But as we are satisfied that the judgment must be reversed and a new trial granted on the question already considered, we think it advisable to go no further.

The judgment must be reversed and a new trial granted, with costs to abide the event.

DANIELS, J., concurred in the result

Present — DAVIS, P. J., and DANIELS, J.

Judgment reversed and new trial ordered, costs to abide event.